UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Roger D. Guerin,
        Claimant

        v.                                    Civil No. 10-cv-421-SM
                                              Opinion No. 2011 DNH 103

Michael J. Astrue, Commissioner,
Social Security Administration
        Defendant

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Roger Guerin moves to reverse the Commissioner's decision denying his application for Social Security Disability Insurance Benefits under Title II of the Social Security Act.  See 42 U.S.C. § 423.  The Commissioner objects and moves for an order affirming his decision.  For the reasons discussed below, Guerin's motion is denied, and the Commissioner's motion is granted.

**Factual Background**

I.   Procedural History.

In December of 2007, while shoveling snow at work, Mr. Guerin fell and severely sprained his left achilles tendon and ankle.  Approximately eight months later, he filed an application for Disability Insurance Benefits, alleging that he had been

unable to work since that accident, due to pain in his knee, feet, and ankles.  He also claimed he suffered from symptoms of complex regional pain syndrome, as well as lower back pain.  His application was denied both initially and by a Federal Reviewing Official.  Guerin then requested a hearing before an Administrative Law Judge ("ALJ").

On March 2, 2010, the ALJ held a hearing by video conference, at which Guerin, his attorney, and a vocational expert appeared.  Approximately six weeks later, the ALJ issued her written decision, concluding that Guerin retained the residual functional capacity to perform the physical and mental demands of a range of sedentary work.  Although Guerin's limitations preclude him from performing any of his past relevant jobs, the ALJ concluded that there was still a significant number of jobs in the national economy that he could perform.  Accordingly, the ALJ determined that Guerin was not disabled, as that term is defined in the Act, at any time prior to the date of her decision.

The Decision Review Board selected the ALJ's decision for review, but was unable to complete that review during the time allowed.  Accordingly, the ALJ's denial of Guerin's application

2

for benefits became the final decision of the Commissioner, subject to judicial review.  Subsequently, Guerin filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence and seeking a judicial determination that he is disabled within the meaning of the Act. He then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 7).  In response, the Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 10).  Those motions are pending.[1]

II.  Stipulated Facts.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 11), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

_____

[1]    Although the parties do not discuss the issue, it appears that Guerin's application for Disability Insurance Benefits was originally approved, and he was found to have been disabled by reason of depression as of May 1, 2008.  Admin. Rec. at 56. Subsequently, however, the Commissioner determined that his depression was not severe and benefits were denied.  See Id. at 61, 104-06.  In short, the Commissioner concluded that there was insufficient evidence "to assess the likely duration of the mental impairment, especially in light of the absence of ongoing therapy."  Id. at 105.  See also Id. at 249-53 (case analysis and Medical Consultant's Review of Psychiatric Review Technique Form).

3

**Standard of Review**

I.   "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence.  See 42 U.S.C. § 405(g).  See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Consequently, provided the ALJ's findings are properly supported, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position.  See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988); Rodriquez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981).


Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from

4

the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  <u>Consolo v. Federal Maritime Comm'n.</u>, 383 U.S. 607, 620 (1966).  <u>See also</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).


II.   <u>The Parties' Respective Burdens</u>.

     An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-47 (1987); <u>Santiago v. Secretary of Health & Human Services</u>, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that his impairment prevents him from performing his former type of work.  <u>See</u> <u>Gray v. Heckler</u>, 760 F.2d 369, 371 (1st Cir. 1985); <u>Paone v. Schweiker</u>, 530 F. Supp. 808, 810-11 (D. Mass. 1982).  If the claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the

national economy that he can perform.  See Vazquez v. Secretary
of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See
also 20 C.F.R. § 404.1512(g).

   In assessing a disability claim, the Commissioner considers
both objective and subjective factors, including: (1) objective
medical facts; (2) the claimant's subjective claims of pain and
disability, as supported by the testimony of the claimant or
other witnesses; and (3) the claimant's educational background,
age, and work experience.  See, e.g., Avery v. Secretary of
Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986);
Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6
(1st Cir. 1982).  When determining whether a claimant is
disabled, the ALJ is also required to make the following five
inquiries:

    (1)  whether the claimant is engaged in substantial
        gainful activity;

    (2)  whether the claimant has a severe impairment;

    (3)  whether the impairment meets or equals a listed
        impairment;

    (4)  whether the impairment prevents the claimant from
        performing past relevant work; and

    (5)  whether the impairment prevents the claimant from
        doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews Guerin's motion to reverse, and the Commissioner's motion to affirm his decision.

## Discussion

I.   <u>Background - The ALJ's Findings</u>.

In concluding that Guerin was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520.  Accordingly, she first determined that Guerin had not been engaged in substantial gainful employment since his alleged onset of disability: December 3, 2007.  Admin. Rec. at 13.  Next, she concluded that Guerin suffers from the following

severe impairments: "complex regional pain syndrome,
osteoarthritis of the left ankle, degenerative disc disease of
the lumbar spine, and an affective disorder." <u>Id</u>. at 14.
Nevertheless, the ALJ determined that those impairments,
regardless of whether they were considered alone or in
combination, did not meet or medically equal one of the
impairments listed in Part 404, Subpart P, Appendix 1.  <u>Id</u>.

   Next, the ALJ concluded that Guerin retained the residual
functional capacity ("RFC") to perform the exertional demands of
sedentary work.[2]  She noted, however, that Guerin cannot perform
jobs that involve the use of "ladders, rope or scaffolds; he may
not have access to unprotected heights; he may not use foot
controls with his lower extremities; and he is limited to simple
routine tasks."  <u>Id</u>. at 15.  In light of those restrictions, the

---

[2]     "RFC is what an individual can still do despite his or her
functional limitations.  RFC is an administrative assessment of
the extent to which an individual's medically determinable
impairment(s), including any related symptoms, such as pain, may
cause physical or mental limitations or restrictions that may
affect his or her capacity to do work-related physical and mental
activities.  Ordinarily, RFC is the individual's maximum
remaining ability to do sustained work activities in an ordinary
work setting on a regular and continuing basis, and the RFC
assessment must include a discussion of the individual's
abilities on that basis."  Social Security Ruling ("SSR"), 96-8p,
<u>Policy Interpretation Ruling Titles II and XVI: Assessing</u>
<u>Residual Functional Capacity in Initial Claims</u>, 1996 WL 374184 at
*2 (July 2, 1996) (citation omitted).

ALJ concluded that Guerin was not capable of returning to any of his prior jobs, most of which were performed at either the heavy or medium exertional level.  Id. at 18.

Finally, the ALJ considered whether there were any jobs in the national economy that Guerin might perform.  Using the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3, (also known as the "Grid"), as a framework, the ALJ concluded that Guerin's exertional limitations had "little to no impact on his unskilled sedentary occupational base."  Id. at 19.  Consequently, the ALJ concluded that Guerin was not "disabled," as that term is defined in the Act, at any time from his alleged onset date through the date of her decision.

In support of his motion to reverse the ALJ's adverse disability finding, Mr. Guerin advances four claims: (1) the ALJ erred in concluding that his impairments do not meet or equal a listed impairment; (2) the ALJ erred in calculating his residual functional capacity; (3) the ALJ erred in finding that his assertions of disabling pain were not entirely credible and (4) the ALJ's overall disability determination is not supported by substantial evidence.  None has merit.

II.  <u>Listed Impairments</u>.

       Guerin challenges the ALJ's determination that he does not

have an impairment (or combination of impairments) that meets or

medically equals one of the listed impairments in 20 C.F.R. Part

404, Subpt. P, App. 1.  Specifically, Guerin says that because he

is not able to ambulate effectively, his complex regional pain

syndrome and osteoarthritis of the left ankle combine to meet

listing 1.02 ("Major dysfunction of a joint").


       Under the relevant regulations, such an impairment is

characterized by:

       gross anatomical deformity (e.g., subluxation,
       contracture, bony or fibrous ankylosis, instability)
       and chronic joint pain and stiffness with signs of
       limitation of motion or other abnormal motion of the
       affected joint(s), and findings on appropriate
       medically acceptable imaging of joint space narrowing,
       bony destruction, or ankylosis of the affected joints
       . . . . [w]ith involvement of one major peripheral
       weight-bearing joint (e.g., hip, knee, or ankle),
       resulting in inability to ambulate effectively, as
       defined in 1.00B2b.

20 C.F.R. Part 404, Subpt. P, App. 1., § 1.02.  The "inability to

ambulate effectively" means:

       an <u>extreme limitation</u> of the ability to walk; i.e., an
       impairment(s) that <u>interferes very seriously</u> with the
       individual's ability to independently initiate,
       sustain, or complete activities.  Ineffective

10

ambulation is defined generally as having insufficient
lower extremity functioning to permit independent
ambulation without the use of a hand-held assistive
device(s) that limits the functioning of both upper
extremities.

20 C.F.R. Part 404, Subpt. P, App. 1., § 1.00B2b (emphasis

supplied).


There is, to be sure, evidence in the record that Guerin

does have some difficulty walking and has an altered or "an

antalgic gait" - particularly in the weeks immediately following

his injury.  But, that evidence is not sufficient to warrant the

conclusion that he has the sort of "extreme limitation of the

ability to walk" that is required.  More importantly, there is

substantial evidence in the record to support the ALJ's

conclusion that Guerin's impairments are not sufficiently severe

to meet or equal a listed impairment.  See, e.g., Admin. Rec. at

153 (three months after his ankle sprain, Guerin reports he is

able to "walk with greater ease," "function fairly well at home,"

and "was able to use his snowblower today").  See also Id. at 192

("Mr. Guerin is able to sit frequently as well as stand, walk,

climb and descend stairs"); 256 ("gait fairly normal"); 263

(same); 338 ("sometimes he can walk a mile, sometimes it is

less"); 367-68 (Guerin "is walking daily, about 15-20 minutes,"

and his "station and gait [are] normal"); 380 ("full joint
motion, no deformities; slow ROM of the ankle, but able to flex
and extend as well as rotate the ankle; station and gait
normal"); 386 ("station and gait normal"); 629 (workers'
compensation form completed by Guerin's physical therapist,
concluding that he could lift/carry a maximum of 50 pounds and
return to full-time work "with modification").


III. Claimant's Residual Functional Capacity.

     Next, Guerin asserts that the ALJ erred in concluding that
he retains the residual functional capacity to perform a range of
sedentary work.  In support of his argument, Guerin points to
evidence in the record suggesting that he requires a walking boot
or cane to ambulate, cannot walk for longer than a few minutes,
and, as a result, can perform only limited activities of daily
living.  That such evidence exists in the record is undeniable.
It is, however, of less persuasive value than Guerin asserts.
So, for example, the references to his use of a walking boot and
cane appear in medical records only weeks after he sprained his
ankle - an unremarkable fact, given that his ankle sprain was
fairly severe.  He does not, however, point to any other
references to his long-term (or even subsequent) use of either
assistive device, and his reliance upon such devices appears to

12

have been only temporary.  In fact, within a year of Guerin's injury, medical records indicate that he was "not using external walking aids."  Admin. Rec. at 336.

Guerin also points to the report prepared by Dr. Davis Clark, an orthopedic specialist, who diagnosed Guerin with "left foot and ankle pain with antalgic gait and limitation of activities of daily living."  Id.  Although Dr. Clark opined that Guerin "no longer has signs or symptoms of complex regional pain syndrome," id., he concluded that, for purposes of Guerin's workers' compensation claim, he suffered from a "7% whole person impairment based upon an antalgic limp with shortened stance phase and documented moderate to advanced arthritic changes of the ankle."  Id.

Even if Dr. Clark opinions are fully credited, it is not entirely clear that they are inconsistent with the ability to perform a range of sedentary work.  But, assuming those opinions are inconsistent with the ALJ's RFC determination, there is certainly other (substantial) evidence in the record to support the ALJ's conclusion that Guerin is capable of performing a range of sedentary work.  For example, the Functional Capacity

Evaluation ("FCE") prepared at approximately the same time as Dr.

Clark's report concluded:

> Mr. Guerin demonstrated the ability to safely lift,
> carry, push, and pull in the medium strength work
> category with some abilities in the heavy strength work
> category.  Mr. Guerin demonstrated the use of good body
> mechanics with all activities requiring strength.
> Observation of positional tolerance indicates that Mr.
> Guerin is able to sit frequently as well as stand,
> walk, climb and descend stairs, stoop moderately, reach
> forward and above shoulder height, and complete
> activities requiring finger dexterity occasionally.
> The client's current abilities do not support the
> performance of work which requires balance, crouching,
> squatting, and kneeling. . . ..
>
> Based on the results of this FCE, Mr. Guerin
> demonstrated the ability to work in at least the medium
> strength work category with some abilities in the heavy
> strength work category.  It is recommended that Mr.
> Guerin explore job opportunities that have the physical
> demands of light or medium strength work with the
> primary work position being seated.  Based on the
> results of balancing testing, it is also recommended
> that he avoid work on slippery, wet, narrow, elevated
> or erratically moving surfaces.

Admin. Rec. at 192.  Based upon observations of Guerin walking

and climbing two flights of ten stairs, it was opined that he

could walk occasionally (up to 1/3 of the work day) as well as

climb stairs occasionally.  Id. at 193.  Those conclusions are

consistent with, for example, Guerin's admitted ability to lift

his 50-pound dog, id. at 263, and the ability to operate his

snowblower, id. at 594.  See also Id. at 183-90 (non-examining

physician's conclusion that Guerin can perform full-time
sedentary work); 618 (physical therapist's opinion dated December
17, 2009, that Guerin can return to full-time work, "with
modification," and lift/carry up to 50 pounds); 629 (same, dated
January 27, 2010); 636 (same, dated March 1, 2010).


IV.   Claimant's Credibility.

        Next, Guerin challenges the ALJ's conclusion that his
complaints of disabling pain were not entirely credible.  When
determining a claimant's RFC, the ALJ must review the medical
evidence regarding the claimant's physical limitations as well as
his own description of those physical limitations, including his
subjective complaints of pain.  See Manso-Pizarro v. Secretary of
Health & Human Services, 76 F.3d 15, 17 (1st Cir. 1996).  When
the claimant has demonstrated that he suffers from an impairment
that could reasonably be expected to produce the pain or side
effects he alleges, the ALJ must then evaluate the intensity,
persistence, and limiting effects of the claimant's symptoms to
determine the extent to which those symptoms limit his ability to
do basic work activities.

        [W]henever the individual's statements about the
        intensity, persistence, or functionally limiting
        effects of pain or other symptoms are not substantiated
        by objective medical evidence, the adjudicator must

15

> make a finding on the credibility of the individual's
> statements based on a consideration of the entire case
> record.  This includes medical signs and laboratory
> findings, the individual's own statements about the
> symptoms, any statements and other information provided
> by the treating or examining physicians or
> psychologists and other persons about the symptoms and
> how they affect the individual . . ..
>
> In recognition of the fact that an individual's
> symptoms can sometimes suggest a greater level of
> severity of impairment than can be shown by the
> objective medical evidence alone, 20 C.F.R. 404.1529(c)
> and 416.929(c) describe the kinds of evidence,
> including the factors below, that the adjudicator must
> consider in addition to the objective medical evidence
> when assessing the credibility of an individuals'
> statements.

SSR 96-7p, Policy Interpretation Ruling Titles II and XVI:

Evaluation of Symptoms in Disability Claims: Assessing the

Credibility of an Individual's Statements, 1996 WL 374186 (July

2, 1996).  Those factors include the claimant's daily activities;

the location, duration, frequency, and intensity of the

claimant's pain or other symptoms; factors that precipitate and

aggravate the symptoms; the type dosage, effectiveness, and side

effects of any medication the claimant takes (or has taken) to

alleviate pain or other symptoms; and any measures other than

medication that the claimant receives (or has received) for

relief of pain or other symptoms.  Id.  See also Avery, 797 F.2d

at 23; 20 C.F.R. § 404.1529(c)(3).

It is, however, the ALJ's role to assess the credibility of claimant's asserted inability to work in light of the medical record, to weigh the findings and opinions of both "treating sources" and other doctors who have examined him and/or reviewed his medical records, and to consider the other relevant factors identified by the regulations and applicable case law.  Part of the ALJ's credibility determination necessarily involves an assessment of a claimant's demeanor, appearance, and general "believability."  Accordingly, if properly supported, the ALJ's credibility determination is entitled to substantial deference from this court.  See, e.g., Irlanda Ortiz, 955 F.2d at 769 (holding that it is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts").

Here, the ALJ's conclusion that Guerin's testimony about the disabling nature of his impairments was not entirely credible is supported by, among other things, Guerin's daily activities; the activities disclosed on his application for benefits and in the medical reports; the October 2008 Functional Capacity Evaluation; and the non-examining physician's report - all of which are inconsistent with Guerin's assertions of disabling pain and

alleged inability to lift more than 15 pounds.  <u>See</u> Admin. Rec. at 76.  In light of the foregoing, the court cannot conclude that the ALJ erred in making her assessment of Guerin's credibility.

V.    <u>Substantial Evidence to Support ALJ's Decision</u>.

Finally, Guerin says the ALJ's decision is not supported by substantial evidence, pointing to various aspects of the record that support his asserted disability and challenging the ALJ's decision to rely upon evidence supportive of the contrary view. As noted above, there is certainly evidence in the record supportive of Guerin's assertion that he experiences periods of significant pain and has some difficulty walking.  But, there is also substantial evidence in the record to support the ALJ's conclusion that he remains capable of performing a significant range of sedentary work and, therefore, is not totally disabled.

In such circumstances - when substantial evidence can be marshaled from the record to support either the claimant's position or the Commissioner's decision - this court is obligated to affirm the Commissioner's finding of no disability.  <u>See</u> <u>Tsarelka</u>, 842 F.2d at 535 ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial

18

evidence."); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir.
1995) ("We must uphold the ALJ's decision where the evidence is
susceptible to more than one rational interpretation."); <u>Gwathney</u>
<u>v. Chater</u>, 104 F.3d 1043, 1045 (8th Cir. 1997) ("We must consider
both evidence that supports and evidence that detracts from the
[Commissioner's] decision, but we may mot reverse merely because
substantial evidence exists for the opposite decision.")
(citation and internal punctuation omitted).

### Conclusion

Having carefully reviewed the administrative record and the
arguments advanced by both the Commissioner and claimant, the
court concludes that the there is substantial evidence in the
record to support the ALJ's determination that Mr. Guerin was not
disabled at any time prior to the date on which the ALJ issued
her decision.  The ALJ's determination that Guerin's impairments
do not meet or medically equal a listed impairment, her
assessment of Guerin's RFC, and her credibility determination are
well-reasoned and supported by substantial evidence in the
record.

As is the case in most Social Security appeals, the question
before this court is not whether it believes Guerin is disabled

19

and entitled to benefits.  Rather, the issue presented is far more narrow: whether there is substantial evidence in the record to support the ALJ's decision - here, her determination that Guerin retains the ability to perform a substantial range of sedentary work.  There is.  Consequently, while there is certainly evidence in the record demonstrating that Guerin suffers from significant ankle/foot pain and has some difficulty walking, the existence of such evidence is not sufficient to undermine the ALJ's determination that he is not disabled within the meaning of the Act.

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 7) is denied, and the Commissioner's motion to affirm his decision (document no. 10) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

June 24, 2011

cc:  Christine W. Casa, Esq.
     Gretchen L. Witt, Esq.